# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| JOHN LASKOW, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.:  2:01-CV-2073-VEH** |
| | ) |
| CAPSTEAD, INC., | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

## I.      INTRODUCTION

Plaintiff John Laskow ("Laskow") filed this lawsuit against Capstead, Inc. ("Capstead") on August 17, 2001.  (Doc. #1).  On March 6, 2002, Laskow filed an amended complaint after obtaining leave of court.  (Doc. #14).  The undersigned inherited this case by reassignment on June 28, 2004.  (Doc. #60).

On February 21, 2006, the court entered a Memorandum Opinion and Order denying class certification.  (Doc. #74).  Presently pending before the court is Capstead's Motion for Summary Judgment filed on October 2, 2006, pertaining to Laskow's individual claims. (Doc. #82).  As analyzed below, the court concludes that Capstead has met its Rule 56 burden of demonstrating the absence of disputed issues of material fact and an entitlement to judgment as a  matter of law.  Accordingly, summary judgment in favor of Capstead is due to be granted, and Laskow's case is

due to be dismissed.

## II.    STATEMENT OF FACTS[1]

### A.    Relevant Ownership History and Financing of Mortgaged Property

Laskow owns a home in Birmingham, Alabama, located at 728 56th Street South 35212.  (Doc. #86 at Ex. 1 ¶ 1; Doc. #84 at Ex. A at 8).  The real estate owned by Laskow is subject to a mortgage that was serviced by Capstead beginning in April 2004.  (Doc. #86 at Ex. 1 ¶ 1;  Doc. #84 at Ex. A at 4).

This home was originally purchased in 1993 by Laskow's friend, Alan Dale Hughes ("Hughes").  (Doc. #84 at Ex. D).  Laskow was not a party to the original mortgage (Doc. #84 at Ex. A at 50).  Instead, on August 16, 1993, Hughes alone

---

[1]As Capstead has noted in its reply brief, Laskow's opposition to summary judgment does not comply  "with the formatting requirements and procedures set out in the Standing Order Establishing Pre-trial Procedure, and Appendix II attached thereto" as directed in the margin order entered on June 15, 2005.  In particular, Laskow has failed to include a factual submission that directly responds to the one set forth by Capstead.  Accordingly, Laskow's opposition is procedurally deficient, and, as a result, all of Capstead's facts are properly deemed as admitted by Laskow. Nevertheless and alternatively, the court has independently studied the factual record, and if the facts are in dispute, they are stated in the manner most favorable to Laskow, despite his procedural non-compliance.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Additionally, these are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

2

entered into a note and mortgage (the "Hughes Note") with another lender, Wyatt Mortgage.  Hughes was the only borrower under the note.  (Doc. #84 at Ex. D; *id.* at Ex. A at 17).  In addition, the Hughes Note was never formally assigned to Laskow. (Doc. #84 at Ex. A at 49-50).  However after Hughes's death, Laskow did begin to make payments to Capstead under the Hughes Note.  (*Id.* at 48-49).

Pursuant to the terms of the Hughes Note, the borrower was required to make monthly payments on the first day of each month. (Doc. #84 at Ex. D ¶ 3(A)).  The note holder was entitled to assess late charges for overdue payments.  Specifically, the Hughes Note provided as follows:

> If the Note Holder has not received the full payment of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(Doc. #84 at Ex. D ¶ 6(A)).  Laskow understood that a mortgage payment was due on the first day of the month. (*Id.* at 100-02, 105).  Laskow also understood that a late fee would be assessed for any payment received after the 16th day of the month. (*Id.* at 102).

## B.  Capstead's Late Fee Practices and Lockbox Procedures

Many borrower notes, like the Hughes Note, required payment by the first day

3

of the month (Doc. #84 at Ex. F at 63), and permitted Capstead to assess a late fee if payments were not received by the 16th day of the month.   In such circumstances, Capstead would assess a late fee on the 17th day of the month. (Doc. #84 at Ex. G at 70).   With respect to payments mailed to P.O. Box locations, third party lockbox operators would process payments and electronically transmit to Capstead all payments processed on that day.   Upon receipt of this electronic transmission, Capstead would post payments to borrower accounts the same day. (Doc. #84 at Ex. G at 43-45; *id.* at Ex. F at 55).   If a payment was not posted on Capstead's system by the late fee cutoff day, a late fee would be assessed the next day.   (Doc. #84 at Ex. G at 70).   At all relevant times, Laskow's payments were sent regular United States mail to Capstead's Dallas, Texas, lockbox, which was operated by Mellon Bank ("Mellon").   (Doc. #84 at Ex. O at 10; *id.* at Ex. I at 15-16; *id.* at Ex. A at 55).

Despite the control procedures in place, to the extent that a particular piece of Capstead regular mail (such as Laskow's payments on the Hughes loan) was physically present at the Mellon lockbox on the 16th but not processed and transmitted until the 17th, no way or method existed to determine whether that piece of mail was actually received by the lockbox on the 16th or the 17th (Doc. #84 at Ex. I at 27-28; *id.* at Ex. J at 19, 21, 36-37; *id.* at Ex. F at 51-52), unless it was subsequently transmitted as part of a special "batch."   (Doc. #84 at Ex. J at 29.)

4

## C.    Laskow's Disputed Late Fees

Laskow asserted he used a systematic method of mailing mortgage payments to Capstead.  (Doc. #84 at Ex. A at 66-70).  Only two late fees of $35.01 are at issue in this lawsuit.  These late fees were assessed in connection with Laskow's September 1997 and May 1999 payments on the Hughes Note.  (Doc. #84 at Ex. A at 64, 73, 98; *id.* at Ex. K ¶ 9).

Laskow sent both the September 1997 payment and the May 1999 payment by United States regular mail.  (Doc. #84 at Ex. A at 65-70).  A late fee was assessed in connection with both payments, as the loan transaction history showed these two payments were posted on the 17th day of the month. (Doc. #84 at  Ex. A at Ex. 4 at CAL 160, 163; *id.* at Ex. H at 21, 25).  These fees were listed on the next month's billing statements and Laskow paid them.  (Doc. #84 at Ex. A at 71; *id.* at Ex. H at 25-26).  Laskow has conceded that he has no affirmative proof to substantiate the precise date on which the two (2) payments triggering the disputed late fees were in fact actually received. (Doc. #84 at Ex. A at 77-78, 81-82, 142-43).

## D.    Capstead's Exit from the Residential Mortgage-Servicing Business

Capstead,  headquartered  in  Dallas,  Texas,  formerly  serviced  residential

mortgage loans. (Doc. #84 at Ex. C ¶ 3.) At the end of 1998, Capstead discontinued this business activity and sold certain assets and its servicing portfolio to two nonparties, Homecomings and GMAC. (Doc. #84 at Ex. B ¶ 4; *id.* at Ex. C ¶¶ 3, 9). Therefore, Homecomings, not Capstead, assessed the late fee in connection with Laskow's May 1999 payment, and Capstead received no late fee income with respect to this particular disputed payment. (Doc. #84 at Ex. B ¶ 4; *id.* at Ex. H at 6).

### E.    Laskow's Individual Claims[2]

Stemming from his two (2) disputed instances of late charges, Laskow has sued for breach of contract (Count II); Fraud (Count III); negligence/wantonness (Count IV); a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count V); unjust enrichment (Count VI); and injunctive relief (Count VII). (Doc. #14).

## III.   BURDEN ON SUMMARY JUDGMENT

As the Eleventh Circuit has recently summarized the burden on summary judgment, including those instances in which an affirmative defense is in issue:

---

[2]Count I of Laskow's lawsuit pertains to the class allegations that he made, which the court has previously dismissed. (Doc. #74).

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quotations and emphasis omitted). If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense. *See Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir.2003).

*International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1273 -74 (11th Cir. 2006).

## IV.   ANALYSIS

### A.   Count II for Breach of Contract[3]

Breach of contract under Alabama law requires proof of the following elements by Laskow:  a valid contract, performance of the contract by plaintiff, breach of the contract by defendant, and resulting damages. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-05 (Ala. 2002).

---

[3]Capstead does not assert any defense to Laskow's contract claims based upon the voluntary payment doctrine as it did in the *Cartwright v. Capstead* case, discussed *infra* at n.5.

7

### 1.   No Express Contract

The Hughes Note is the pertinent contractual document, which includes the language relating to late fees upon which Laskow bases his complaint.  However, the evidence is insufficient as a matter of law for Laskow to establish an express contract with Capstead because he was neither a signatory nor an obligor under the Hughes Note.  Instead, the only borrowing party to the note is Hughes, who upon his death transferred only his interest in the real property to Laskow.

Moreover, there was no express assignment, assumption, or transfer of Hughes's obligations under the Hughes Note to Laskow.  Under Alabama law "[i]t is well-settled that one that is not a party to, or in privity with, a contract cannot sue for its breach."  *Airlines Reporting Corp. v. Higginbotham*, 643 So. 2d 952, 954 (Ala. 1994).  Therefore, Laskow has no express breach of contract claim against Capstead as a matter of law.

### 2.   No Implied Contract

Alternatively, Laskow maintains that he and Capstead entered into an implied contract by virtue of  (1) his oral communications with Capstead, (2) his return of completed information forms to Capstead, (3) Capstead's acceptance of Laskow's

monthly payments, and (4) the terms of the Hughes Note.  As affirmative defenses, Capstead has raised the statute of frauds  and the parole evidence rule and has demonstrated their application as a bar to any implied contract claim as a matter of law.

As codified in the Alabama Code, the statute of frauds voids every "promise to answer for the debt . . . of another," "contract for . . . any interest [in land] . . .," and "agreement . . . to lend money . . . or to modify the provisions of such an agreement . . ." that is not in writing.  Ala. Code § 8-9-2(3), (5), & (7) (2006).  Additionally, a contract that is required to be in writing under the statute of frauds cannot be modified by subsequent oral agreement.  *See Cammorata v. Woodruff*, 445 So. 2d 867, 872 (Ala. 1983).  Moreover, "[t]he parol evidence rule prohibits parties to a written agreement from attempting to alter the agreement by oral testimony." *Barron II v. Barron*, 668 So. 2d 793, 795 (Ala. Civ. App. 1995).  Accordingly, an attempt to orally modify a promissory note, which is an agreement to lend money covered by the statute of frauds, is unenforceable unless it is in writing.  *See Walsh v. Douglas*, 717 So. 2d 807, 810-11 (Ala. Civ. App. 1998).

Against this backdrop, the oral dealings that Laskow had with Capstead are insufficient to modify the existing note or create an implied contract between Laskow

and Capstead.  Instead, any such agreement would be required to be in writing in order to comply with the statute of frauds and to satisfy the parol evidence rule, *see Barron II*, 668 So. 2d at 794-95 (evidence of alleged oral agreement substituting debtor's father as obligor under note barred by statute of frauds), and any oral discussions between Laskow and Capstead concerning the Hughes Note are inadmissible proof to support Laskow's claim of breach.

Moreover, the borrower information documents, including a "New Borrower Information" form and a "Borrower Employment Information" form,[4] that Laskow completed and returned to Capstead do not operate to comply with the writing requirement of the statute of frauds.  In order to satisfy the statute of frauds, the writing must set forth the "essential elements" of the agreement—including the consideration exchanged—and contain the "signature of the party to be charged." *Bussey v. John Deere Co.*, 531 So. 2d 860, 863 (Ala. 1988); *see, e.g., Webster v. Aust*, 628 So. 2d 846, 848 (Ala. Civ. App. 1993) (information on check too indefinite to satisfy statute of frauds).  The forms that Laskow submitted to Capstead do not set forth any of the essential terms necessary to establish an agreement to transfer or assign the rights and obligations under the Hughes Note to Laskow.  Likewise, the

---

[4]*See* Doc. #86 at Ex. D.

forms are not signed by Capstead.  (Doc. #84 at Ex. A at Ex. 2 at CAL 128-29).  As such, the forms are insufficient to satisfy the statute of frauds and fail to establish an enforceable implied agreement between Laskow and Capstead.[5]

Furthermore, Laskow's payments to Capstead under the terms of the Hughes Note and Capstead's acceptance of those payments do not establish any implied obligation by Laskow under the Hughes Note. *See First Fed. Sav. & Loan Ass'n of East Hartford v. Chappell*, No. CV 9661212S, 1997 WL 12801, at *3 (Conn. Sup. Ct. Jan. 3, 1997) ("Mere acquiescence in permitting someone other than the maker of the note to pay the monthly payments does not relieve the maker from the obligation under the note that he executed."). (Doc. #84 at Ex. N).  Nor do Laskow's payments to Capstead qualify under the "part performance" exception to the statute of frauds because Laskow is not a purchaser or a refinancer, and his possession of the property does not stem from any purported agreement with Capstead, but rather from the transfer of Hughes's interest in the land, upon his death, to Laskow. *See Holman v. Childersburg Bancorporation, Inc.*, 852 So. 2d 691, 698 (Ala. 2002) ("The cases also hold that the possession of the purchaser must be exclusively referable to the

---

[5]Similarly, the Hughes Note is unsatisfactory as a writing because it is not signed by Laskow, and it does not establish any of the essential terms necessary to imply the existence of an agreement to transfer or assign the rights and duties away from the original borrower under the Hughes Note to Laskow.

contract[.]").  Therefore, Laskow's payments to Capstead do not place him implicitly in privity of contract with Capstead under the Hughes Note, and are insufficient proof of an implied contract between Laskow and Capstead concerning the Hughes Note.

### 3.   No Proof of Breach

Alternatively, even if Laskow is able to establish the existence of either an express or implied contract, his theory also fails because he lacks sufficient proof of breach.  To support his contract claim, Laskow bears the burden of proving that Capstead breached a contract with Laskow by timely receiving a payment from him but nevertheless assessing a late fee.  *See Cocke v. Odom*, 385 So. 2d 1321, 1322 (Ala. Civ. App. 1980) (describing burden of proof for breach of contract claims). Laskow's evidence of breach as it pertains to him, and his related standing as an injured party, is only speculative at best.

As this court has previously recognized:  "It is not at all clear that anyone other than those who made their payments by certified mail will be able to establish when a particular payment was received." (Doc. #84 at Ex. O at 21; Doc. #74 at 21).  The record shows that Laskow did not send any of his payments by certified mail.   Nor has Laskow identified any other evidence to establish that his payments posted on the 17th were actually received by Capstead on the 16th.

Instead, as this court previously acknowledged, "Laskow conceded, in his deposition, that he has no way to demonstrate the precise day when the two payments that he alleges were improperly the cause of late charges were received." (*Id.* Doc. #84 at Ex. O at 24 n.13 (citing Laskow deposition testimony); Doc. #74 at 24 n.13 (same)). Moreover, Laskow's own personal mailing habits or Mellon's lockbox procedures are insufficient to establish when Capstead received Laskow's two (2) payments resulting in the disputed late fees. (*See* Doc. #74 at 21 (rejecting argument that proof of establishment by Capstead of delayed system of posting payments received on 16th day of month establishes that any particular class member's late fee is improper, given evidence that at least some of the payments posted on the 17th day of month were in fact received on the 17th day)); *see also Clopton v. Budget Rent A Car Corp.*, 197 F.R.D. 502, 509 (N.D. Ala. 2000) (where claims "would rise or fall based almost entirely on highly individualized circumstances," plaintiff will be unable "to establish any of his claims based on evidence of . . . a uniform practice"). Therefore, Laskow's breach of contract claim fails for the additional reason that he cannot demonstrate that Capstead committed any breach against him as a matter of law. Accordingly, summary judgment in favor of Capstead is due to be entered as to Count II because Laskow (1) cannot show the existence of an express or an implied contract, and (2) regardless of (1), cannot show sufficient evidence of any breach by

Capstead as it pertains to him.

**B.     Count III for Fraud**

A fraud claim under Alabama law requires a showing, *inter alia*, that the defendant made a misrepresentation, the plaintiff reasonably relied upon that misrepresentation, and the plaintiff suffered damages proximately caused by the reliance.  *See Reynolds Metals Co.*, 825 So. 2d at 104-05 (elements of fraud under Alabama law).  Laskow is unable to prove common-law fraud for at least  two reasons.

First, Laskow's proof is insufficient to establish that Capstead made a false representation.  Laskow premises his fraud claim upon Capstead's misrepresentation in sending him billing statements informing him that he owed late fees even though his payments were timely received.  However as discussed in §IV.A.3., *supra*, Laskow has no ability to prove that his payments, were in fact, timely received by Capstead.  Relatedly, Laskow cannot prove that Capstead improperly charged him late fees or misrepresented the delinquent status of his account.

Second, Laskow's fraud claim is barred under the reasoning of Judge Acker's

decision in *Cartwright v. Capstead* (CV-99-01227-WMA).[6]  More specifically, as Judge Acker explained, "a mere breach of a contractual provision is not sufficient to support a charge of fraud" under Alabama law.  (Doc. #84 at Ex. L at 9 (quoting *Brown-Marx Assocs. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1370-71 (11th Cir. 1983))).   Beyond asserting a mere breach, a party must also prove that the representations were made with the intent to deceive.  *See Evans v. Adam's Rib, Inc.*, 289 Ala. 377, 380, 267 So. 2d 448, 450 (1972).  Laskow has not offered sufficient proof that Capstead made any representations to him with an intent to deceive. Instead, Laskow bases his fraud claim solely upon the failure of Capstead to honor the contractual provisions contained in the Hughes Note.  Accordingly, summary judgment in favor of Capstead is due to be entered as to Count III.

---

[6]*Cartwright v. Capstead* (CV-99-01227-WMA) was another purported class action alleging that Capstead improperly charged borrowers late fees on mortgage payments there were timely received by it. *Cartwright* was dismissed by Judge Acker on summary judgment.   Judgment was entered in favor of Capstead on the Cartwrights' claims for the following reasons:  (1) breach of contract or claim barred by voluntary payment doctrine; (2) fraud claim failed for lack of "colorable proof of reasonable reliance" and because "mere breach of contract is insufficient to support such a claim"; (3) negligence/wantonness claim because "mere breach of contract" does not support a tort claim and there was no independent duty beyond that supplied by the mortgage note; and (4) injunctive relief claim was moot, given Capstead's exit from the mortgage servicing business.  (*See generally* Doc. #84 at Ex. L).  The dismissal was affirmed by the 11th Circuit in an unpublished opinion (No. 00-15584). (*See generally* Doc. #84 at Ex. M).

15

## C.    Count IV for Negligence/Wantonness

Similar to his fraud claim, Laskow's negligence/wantonness count also fails on the basis of Judge Acker's analysis in the substantially similar *Cartwright* decision.  (Doc. #84 at Ex. L at 13-14).  "[T]he Alabama Supreme Court has stated that an ordinary breach of contract will not give rise to a tort."  *Brown-Marx Assocs.*, 703 F.2d at 1371 (citing *Bentley-Beale Inc. v. Wesson Oil & Snowdrift Sales Co.*, 231 Ala. 562, 165 So. 830, 832 (1936)).   Instead, an essential element of a negligence/wantonness claim is breach of some legal duty beyond a mere contractual duty.  *See Cahaba Seafood, Inc. v. Central Bank of the South*, 567 So. 2d 1304, 1306 (Ala. 1990) ("[P]laintiffs contend that the summary judgment was improper as to their claim of wantonness and/or negligence.  Again, we disagree; we find that [defendant] Central Bank owed no duty to [plaintiffs] outside the confines of the [line of credit] agreement.").  Here, like the plaintiffs' negligence/wantonness claim in *Cartwright*, Laskow's negligence/wantonness claim is limited to Capstead's  contractual duties purportedly owed to Laskow under the Hughes Note.  Because Laskow has adduced no evidence showing that Capstead owed Laskow a duty outside of any contractual duties, Laskow's claim for negligence/wantonness is inactionable as a matter of law.  Accordingly, summary judgment in favor of Capstead is due to be granted as to Count IV.

16

### D.    Count V for RICO

The elements of a civil RICO claim include:

> (1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person,(8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages.

*Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360-61 (11th Cir. 2002) (footnotes omitted).

Akin to the court's analysis pertaining to fraud, Laskow's RICO claim similarly fails for want of any sufficient showing of a "misrepresenation" made by Capstead. Accordingly, summary judgment in favor of Capstead is due to be entered on Count V.

### E.    Count VI for Unjust Enrichment

To prevail on a claim of unjust enrichment in Alabama, a plaintiff must show that the "defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Dickinson v. Cosmos Broad. Co.*, 782 So. 2d 260, 266 (Ala. 2000) (quoting *Hancock-Hazlett Gen. Constr. Co. v. Trane Co.*, 499 So. 2d 1385, 1387

17

(Ala. 1986)) (emphasis omitted).  For the same failure of proof as to the breach element as analyzed in § IV.A.3., *supra*, Laskow's claim for unjust enrichment is similarly legally deficient.  More specifically, Laskow cannot demonstrate that Capstead improperly assessed late fees because he cannot prove that Capstead received his payments on time.  *See Clopton*, 197 F.R.D. at 508 (plaintiff's contract-based claims of breach of contract and unjust enrichment premised on the same factual contention).  Accordingly, summary judgment in favor of Capstead is due to be entered on Count VI.

## F.    Count VII for Injunctive Relief

Laskow's claim for injunctive relief is moot because Capstead is no longer in the residential mortgage-servicing business.  *See Reich v. Occupational Safety & Health Review Comm'n*, 102 F.3d 1200, 1201 (11th Cir. 1997) (injunction moot without likelihood of future harm); *see also Ransom v. Davies*, 816 F. Supp. 681, 682 (D. Kan. 1993) (plaintiff's request for injunctive relief mooted by change in defendant's conduct so that potential for future harm was discontinued).  As Judge Acker recognized in *Cartwright*, and as affirmed by the Eleventh Circuit, because, by the end of 1998, Capstead had ceased servicing residential mortgage loans, it cannot be enjoined with respect to any practice at issue.  (Doc. #84 at Ex. L at 15-16.)

Likewise, Laskow's claim for injunctive relief is moot as there is nothing for this court to enjoin with respect to Capstead, and summary judgment in favor of Capstead is due to be entered on Count VII.

### G.   DISPUTED LATE FEES RELATING TO LASKOW'S MAY 1999 PAYMENT

Because Capstead was no longer in the business of servicing residential mortgages in 1999 as discussed in § IV.F., *supra*, summary judgment in favor of Capstead as to the disputed late fees relating to the payment Laskow made in May 1999 is due to be granted on the alternative basis that Capstead could not and did not cause any alleged injury to Laskow during this particular time period and irrespective of the stated legal theory, as a matter of law. Instead, another servicing company administered charges for late fees.

### V.   CONCLUSION

As analyzed above, Capstead has carried its burden on summary judgment of demonstrating the absence of any disputed material fact and an entitlement to judgment as a matter of law. Accordingly, Capstead's Motion for Summary Judgment is due to be granted. The court will enter an order consistent with this Memorandum Opinion.

19

**DONE** and **ORDERED** this the 19th day of March, 2007.

_____
**VIRGINIA  EMERSON  HOPKINS**
United States District Judge